**James W. SWISTOCK, individually, James W. Swistock and Peter R. Swistock, Sr., trading as Peter R. Swistock, Sr., and James W. Swistock, Partnership, a Pennsylvania General Partnership, and Swistock Associates Coal Corporation, Appellants,**

v.

**E.L. JONES, Hazel A. Jones, Ace Drilling Company, Inc., and South Fork Equipment, Inc.**

No. 88–3517.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule 12(6)
Dec. 5, 1988.

Decided Sept. 15, 1989.

---

Stephen C. Braverman, Gary R. Leadbetter, Brian P. Kenney, Baskin Flaherty Elliott & Mannino, P.C., Philadelphia, Pa., for appellants.

Robert G. Rose, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, Pa., for appellees.

Before SLOVITER and BECKER, Circuit Judges, and BARRY, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

This appeal presents the now-familiar issue of what constitutes a "pattern of racketeering activity" for purposes of civil RICO. Plaintiffs/appellants argue that their complaint alleging defendants' commission of various acts of wire and mail fraud as part of a scheme to defraud in connection with defendants' lease of coal producing properties to plaintiffs adequately pleads a pattern of racketeering activity under the principles articulated in *Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36 (3d Cir.1987). The district court held otherwise and dismissed the complaint.

Because the issue of what constitutes sufficient allegations of a RICO pattern was then pending before the Supreme Court, we held the appeal in abeyance. Now that the Supreme Court has announced its judgment in *H.J. Inc. v. Northwestern Bell Telephone Co.*, — U.S. —, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), we turn to the merits of plaintiffs' claim. Our review is plenary and we must treat the facts alleged in the complaint as true and affirm the dismissal only if it is beyond doubt that the plaintiffs could prove no set of facts that would entitle them to relief. *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273 (3d Cir.1985).

### II.

Defendants E.L. and Hazel Jones owned real property and coal reserves in Blair County, Pennsylvania, which they mined through Ace Drilling Company and Southfork Equipment Company, two corporations owned and controlled by one or both of them (hereinafter "the Joneses"). Plaintiffs James and Peter Swistock, their partnership, and their corporation, Swistock Associates Coal Corp. (hereinafter "the Swistocks"), leased the land and purchased machinery and processing facilities from the Joneses pursuant to an Acquisition Agreement executed November 30, 1983.

As alleged in the complaint, after the Swistocks consummated the Acquisition Agreement, they discovered that the actual condition of the leased property and coal reserves differed from the earlier representations made by the Joneses with respect to the quality and quantity of coal and that the Joneses had falsely represented that they knew of no facts which could result in violations of Pennsylvania Department of Environmental Resources regulations, when in fact they had committed a variety of such violations.

The Swistocks brought suit in federal court alleging that the Joneses had violated and conspired to violate RICO, 18 U.S.C. §§ 1961–1968 (1982 & Supp. V 1987). The RICO counts were predicated on six acts of mail fraud as evidenced by letters sent in the course of the lease negotiations and

---

* The Honorable Maryanne Trump Barry, United States District Judge for the District of New Jersey, sitting by designation.

eight acts of wire fraud as evidenced by eight telephone conversations in connection with the lease. The complaint also contained a number of pendent state law claims for fraudulent misrepresentation, negligent misrepresentation, and breach of contract. The Joneses moved for dismissal for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). The district judge granted the Joneses' motion on the ground that under this court's precedents, the complaint failed to allege a legally sufficient pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

### III.

In *H.J. Inc.*, the Supreme Court established that a single scheme could support a pattern of racketeering activity as required by 18 U.S.C. § 1962(c), 109 S.Ct. at 2901, a conclusion which this court had previously reached in *Barticheck*. However, the mere fact that two or more predicate acts are committed in furtherance of a fraudulent scheme is not by itself sufficient to establish a RICO pattern. The predicate acts must display continuity and relationship. *See H.J. Inc.*, 109 S.Ct. at 2900 (racketeering predicates must be "related, *and* ... amount to or pose a threat of continued criminal activity") (emphasis in original); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985) (citing legislative history).

The Supreme Court held that relationship for RICO purposes is defined in the same way as it is in the Dangerous Special Offender Sentencing Act, 18 U.S.C. § 3575 *et seq.* (now partially repealed). 109 S.Ct. at 2900–01. Thus, defendants' acts must have some relationship to one another by virtue of having similar " 'purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* at 2901 (quoting 18 U.S.C. § 3575(e)).

The Court's definition of continuity was more elusive. It noted that " '[c]ontinuity' is both a closed- and open-ended concept,

referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." 109 S.Ct. at 2902 (citing *Barticheck*, 832 F.2d at 39). Thus, the length of time over which the predicate acts are alleged to have occurred is relevant, but the fact that the alleged predicates occurred over a short period is not dispositive. *Id.* Even a closed-ended scheme of short duration, however, could involve a "distinct threat of long-term racketeering activity, either implicit or explicit." *Id.* Thus, the Court stated "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.*

Applying these principles to the case before it, the Court concluded that the district court had improperly dismissed the case under Fed.R.Civ.P. 12(b)(6) for failing to allege a legally sufficient pattern. Plaintiffs had alleged that defendant Northwestern Bell had engaged in an attempt to influence a state ratemaking body through various acts of bribery. In concluding that the complaint sufficiently alleged a pattern, the Court noted that the complaint asserted acts occurring "with some frequency over at least a 6–year period," and that "a threat of continuity of racketeering activity might be established at trial by showing that the alleged bribes were a regular way of conducting Northwestern Bell's ongoing business." *Id.* at 2906.

### IV.

While the degree of concrete guidance provided by *H.J. Inc.* is open to debate, *see H.J. Inc.*, 109 S.Ct. at 2907–08 (Scalia, J., concurring), we must attempt to apply the teachings of that case to the matter at hand. The district court correctly identified long-term racketeering activity or the threat thereof as the touchstone of the continuity concept. The district court, however, applied the six factor test which we had enunciated in *Saporito v. Combustion Engineering, Inc.*, 843 F.2d 666, 676–77 (3d Cir.1988), *vacated and remanded on other grounds,* — U.S. ——, 109 S.Ct.

1306, 103 L.Ed.2d 576 (1989); *see also Barticheck*, 832 F.2d at 39, and which looked to the following six factors: "(1) the number of unlawful acts; (2) the length of time over which the acts were committed; (3) the similarity of the acts; (4) the number of victims; (5) the number of perpetrators; and (6) the character of the unlawful activity." The district court, essentially determining that the number of victims and the number of perpetrators were the most significant factors in our calculus, concluded that the objective of the defendants' alleged predicate acts as described in the complaint was limited to the infliction of a single harm on a limited number of victims, and that plaintiffs would therefore be unable to prove the existence of a pattern. App. at 51–52. Although this result may have been consistent with the law of this circuit as it stood at the time the district court decided the matter, it is no longer tenable in light of *H.J. Inc.*

The Supreme Court made no explicit reference in *H.J. Inc.* to the number of victims or the number of perpetrators as relevant factors in its discussion of continuity, despite the fact that all of Northwestern Bell's customers were arguably victims of the alleged scheme to raise rates. Were the number of victims a dispositive factor, *H.J. Inc.* could have been decided on that basis. The Supreme Court's unequivocal rejection of the multiple scheme rationale makes it unlikely that the limited number of persons alleged to be victims of a scheme establishes as a matter of law that a plaintiff has failed to plead a RICO pattern.

Furthermore, in the wake of *H.J. Inc.*, the Supreme Court vacated and remanded for reconsideration the two cases on which the district court relied in concluding that the single injury, single victim scheme alleged by plaintiffs was legally insufficient to state a RICO pattern. *See Walk v. Baltimore & O.R.R.*, 847 F.2d 1100 (4th Cir.1988), *vacated and remanded*, —— U.S. ——, 109 S.Ct. 3235, 106 L.Ed.2d 583 (1989); *Marshall–Silver Constr. Co. v. Mendel*, 835 F.2d 63 (3d Cir.1987), *vacated and remanded*, —— U.S. ——, 109 S.Ct. 3233, 106 L.Ed.2d 582 (1989). Although

the vacation of these decisions does not of its own force mandate a reversal in this case, the underpinnings of the district court's decision have been shaken.

In *H.J. Inc.*, the Supreme Court stated, "[w]hether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case." 109 S.Ct. at 2902. *See also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 790 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) (requirements for pleading a RICO enterprise are minimal). Although the Court in *H.J. Inc.* did not explicitly hold that the existence of a RICO pattern was a jury question, the Court held that the district court had improperly dismissed plaintiffs' RICO claim because "a threat of continuity of racketeering activity *might be established at trial* by showing that the alleged bribes were a regular way of conducting Northwestern Bell's ongoing business." 109 S.Ct. at 2906 (emphasis added).

We do not agree, as plaintiffs appear to argue, that no RICO complaint may be dismissed at the pleading stage for failure to state a claim as to pattern. It does appear, however, that in many cases plaintiffs will be able to withstand a facial attack on the complaint and have the opportunity to have their pattern allegations threshed out in discovery. It may be that many of these issues will then be susceptible to resolution via summary judgment.

Thus, while *H.J. Inc.* does not foreclose the possibility that, in a given case, it may be proper to dismiss a RICO complaint on Rule 12(b)(6) grounds for failing to allege a pattern of racketeering activity as a matter of law, we conclude that such a resolution is not proper in this case. Although we also may have concluded in the pre-*H.J. Inc.* period that plaintiffs pled at most a state law fraud case, we are now bound to give the allegations a broader interpretation. Whatever vitality the single victim, single injury approach may have after *H.J. Inc.* awaits further case development.

Plaintiffs' complaint alleged numerous predicate acts of wire fraud and mail fraud made by defendants over a period of approximately fourteen months, September 9, 1983 to November 6, 1984, for the purposes of inducing plaintiffs to enter into the leasing transaction and to induce plaintiffs to continue making monthly payments under the lease. Additionally the complaint alleged, but did not separately identify as predicate acts, further misrepresentations made by defendants in connection with negotiations for a settlement agreement which the parties ultimately signed on October 31, 1985 to resolve disputes over the performance of the Acquisition Agreement. Plaintiffs also alleged that defendants double-billed them for parts for the equipment and machinery that defendants sold to them pursuant to a separate agreement.

The district court treated as relevant only those allegations made during the last four months of 1983 leading up to the execution of the Acquisition Agreement. It is clear, however, that the predicate acts alleged by plaintiffs occurred over a span of more than one year. To the extent that the district court failed to consider some of plaintiffs' allegations, it erred. Furthermore, plaintiffs' allegations, particularly those concerning misrepresentations that defendants allegedly made in regard to other potential transactions with plaintiffs, App. at 7, are not inconsistent with proof that defendants regularly conducted their business via predicate acts of racketeering. Treating all the allegations in the pleadings as true, as we must at this juncture, plaintiffs may be able to establish either the existence of a closed-end period of repeated conduct of sufficient length or a threat of continuity "by showing that the predicate acts ... are part of an ongoing entity's regular way of doing business," see 109 S.Ct. at 2902, to satisfy the requirements of *H.J. Inc.*

Defendants have not challenged the related activity prong of the pattern inquiry, nor did the district court find that element missing. In any event, the acts of mail and wire fraud pleaded were allegedly for the same purpose of fraudulent misrepresentation with respect to the mineral lease.

### V.

We therefore conclude that dismissal of the RICO claims and the pendent state law claims was improper at this stage. For the foregoing reasons, we will reverse the district court's order dismissing the case for failure to state a federal claim and remand for proceedings in accordance with this opinion.