**C. Leon SMITH, Plaintiff,**

v.

**THE EQUITABLE, Defendant.**

**No. CIV.A. 98–1264.**

United States District Court,
E.D. Pennsylvania.

Dec. 8, 1998.

---

Joseph T. Wright, Jr., Danielle M. Mulcahey, Wright & Associates, Scranton, PA, for Plaintiff.

Larry Besnoff, Obermayer, Rebmann, Maxwell & Hippel, LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is Defendant, The Equitable's ("Equitable" or "Defendant"), Motion to Compel Arbitration of Plaintiff's claims and to Dismiss Plaintiff's complaint. Plaintiff, C. Leon Smith's ("Smith" or "Plaintiff"), complaint alleges claims for employment discrimination under 42 U.S.C. § 2000e *et. seq.* (Title VII), 42

U.S.C. § 1981, and the Pennsylvania Human Relations Act (the "PHRA") as well as Pennsylvania state law claims for defamation, promissory estoppel, and intentional infliction of emotional distress. For the following reasons, Defendant's Motion to Compel Arbitration is granted and Plaintiff's complaint is dismissed without prejudice.

## BACKGROUND

Plaintiff's claims arise out of a pre-employment agreement he entered into with Defendant. At the end of 1996, Plaintiff applied to Defendant for a position selling "Series 6" annuities. Joseph McDonough ("McDonough"), a District Manager for Defendant, interviewed Plaintiff and forwarded Plaintiff's resume to Joel Albert ("Albert"), an Agency Manager for Defendant. McDonough informed Albert he was interested in hiring Plaintiff, but Albert allegedly was not interested in hiring Plaintiff because Plaintiff was African–American.

Nonetheless, in mid-January 1997, McDonough offered Plaintiff a pre-employment contract to sell securities. Under this contract, Plaintiff was a "Prospective Agent" and was attempting to "qualify for employment" with Defendant. The terms of the pre-employment agreement also provided that Plaintiff would secure registration with the National Association of Securities Dealers ("NASD") during the pre-contract training period.

Plaintiff alleges that from January through June of 1997, while he was under the pre-employment agreement, he was prevented from selling securities by Albert. In June of 1997, Plaintiff allegedly received a letter from Albert withdrawing the pre-employment agreement. Plaintiff then filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter on December 10, 1997. Plaintiff filed his complaint in this Court on March 10, 1998.

## DISCUSSION

*I. Motion to Compel Arbitration*

Defendant argues that Plaintiff should be compelled to arbitrate his claims because Plaintiff agreed to arbitrate these claims in the NASD registration form. Defendant's pre-employment agreement required Plaintiff to secure NASD registration. In order to do so, Plaintiff had to execute and file a Uniform Application for Securities Industry Registration or Transfer (the "U–4 Application") with NASD. Plaintiff executed the U–4 Application on January 9, 1997.

The U–4 Application provides that Smith agrees "to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10...." (U–4 Application at ¶ 5). Item 10 of Plaintiff's U–4 Application indicates that he registered with NASD. The NASD Code of Arbitration Procedure requires arbitration of "any dispute, claim or controversy arising out of or in connection with the business of any members of the [NASD], or arising out of the employment or termination of employment of associated person(s) with any member ... (a) between or among members [and] (b) between or among members and associated persons." *NASD Manual—Code of Arbitration Procedure* Rule 10101 (1997).

Defendant argues that Plaintiff's claims in the instant case all arise out of Smith's potential employment with Defendant and, thus, they must be arbitrated. Plaintiff responds that the current claims are not subject to arbitration because he was never an employee of Defendant and because he was fraudulently induced to sign the U–4 Application.[1]

*A. Legal Standard Governing Arbitration*

■ There is a strong federal policy " 'favoring arbitration.' " *Seus v. John Nu-*

---

**1.** Plaintiff initially made more arguments to support his claim that he was not compelled to arbitrate. However, Plaintiff recognizes that the Third Circuit's decision in *Seus v. John Nuveen & Co., Inc.,* 146 F.3d 175 (3d Cir.1998), forecloses most of his arguments. Therefore, this memorandum will only address Plaintiff's remaining arguments that he was not an employee of Defendant and that he was fraudulently induced to sign the U–4 Application.

*veen & Co., Inc.*, 146 F.3d 175, 178 (3d Cir.1998)(quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991)). When interpreting an agreement to arbitrate, " 'all ambiguities must be resolved in favor of arbitrability.' " *Id.* at 186 (quoting *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 798 (10th Cir.1995)). "Motions to compel arbitration under an arbitration clause should not be denied 'unless it can be said with positive assurance that the arbitration clause is not susceptible [to] an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Zandford v. Prudential–Bache Securities, Inc.*, 112 F.3d 723, 727 (4th Cir.1997)(internal citations and quotation marks omitted). In determining whether to require arbitration in this case, we must determine whether there "is a binding agreement to arbitrate between the parties and, if so, whether this dispute is within the scope of that agreement." *Seus*, 146 F.3d at 178.

## B. Plaintiff's Claims That He Was Not An Employee

Plaintiff argues that there was not a binding agreement to arbitrate between the parties because he was not an employee of Equitable. Plaintiff argues that he was only engaged in a pre-employment contract with Defendant and that he had not actively sold anything for Defendant. Therefore, Plaintiff argues that the NASD requirement that employment-related disputes be arbitrated does not apply to him.

■ NASD requires arbitration of all suits "arising out of or in connection with the business of any members of the [NASD], or arising out of the employment or termination of employment of associated person(s) [2] with any member...." *NASD Manual—Code of Arbitration Procedure* Rule 10101 (1997). Plaintiff's current "failure to hire" and related state law claims arise out of the pre-employment contract entered into between Plaintiff and Defendant. Accordingly, we

find that Plaintiff's current claims either arise out of or in connection with the business of a NASD member or arise out the employment or termination of employment of an associated person with any member. Therefore, Plaintiff's claims constitute the type of claims anticipated by the language of the U–4 Application and the NASD Code of Arbitration Procedure. *See generally Seus*, 146 F.3d at 186; *Thomas James Associates, Inc. v. Jameson*, 102 F.3d 60, 65–66 (2d Cir.1996)(stating that NASD Arbitration Procedure applies to "employment-related disputes"); *Francis v. Marshall*, 661 F.Supp. 773, 775 (D.Mass.1987)(recognizing broad scope of NASD arbitration clause).

## C. Plaintiff's Claims That He Was Fraudulently Induced to Sign U–4 Application

■ Plaintiff also argues that he should not be required to arbitrate his "failure to hire" and related state law claims because he did not "knowingly agree" to arbitrate but rather was induced to sign the agreement by fraudulent misrepresentation. Plaintiff alleges that Defendant fraudulently "induced him to sign the Form U–4 while intending not to hire him so that he would be precluded from bringing suit under Title VII and 1981." (Pl.'s Reply Mem. at 3). In order to avoid arbitration based on this theory, Plaintiff must make a showing of "fraud, duress, mistake or some other ground recognized by the law applicable to contracts generally" that would allow this Court not to enforce the agreement entered into by Plaintiff. *Seus*, 146 F.3d at 184.

■ The elements of fraud under Pennsylvania law are "(1) a material factual misrepresentation; (2) made with knowledge or belief of its falsity; (3) with the intention that the other party rely thereon; (4) resulting in justifiable reliance to that party to his detriment." *Agathos v. Starlite Motel*, 60 F.3d 143, 147 (3d Cir.1995); *see also Moser v. DeSetta*, 527 Pa. 157, 589 A.2d 679, 682 (Pa. 1991); *Mellon v. Barre–National Drug Co.*,

---

**2.** Associated person is defined by NASD as "(1) a natural person registered under the Rules of the Association...." *See* Definition (ee) of "person associated with member" or "associated person of a member" *NASD Manual—By–Laws of the National Association of Securities Dealers, Inc.*, Article I, Definitions (ee).

431 Pa.Super. 175, 636 A.2d 187, 189 (Pa.Super.1993). Fraud can consist of "anything calculated to deceive, whether by single act or combination or by suppression of truth or suggestion of what is false." *Moser,* 589 A.2d at 682; *see also Cottman Transmission Systems, Inc. v. Melody,* 869 F.Supp. 1180, 1186 n. 10 (E.D.Pa.1994).

The Federal Rules of Civil Procedure require that fraud be plead with particularity. *See* Fed.R.Civ.P. 9(b). The Third Circuit explained this particularity requirement as follows: "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir. 1984). "[T]he complaint need not describe the precise words used; it is sufficient if the complaint 'describes the nature and subject of the alleged misrepresentations.'" *Event Marketing Concepts, Inc. v. East Coast Logo, Inc.,* No. CIV.A.97–6812, 1998 WL 314657, *2 (E.D.Pa. June 16, 1998)(quoting *Seville,* 742 F.2d at 791).

■ In the instant case, Count V of Plaintiff's complaint alleges that:

29. Plaintiff relied upon promises and representations of the Defendant.

30. Having relied upon the aforesaid, the Plaintiff believed, to his detriment, that the Defendant would fulfill its promises and contractual obligations.

31. As a result of Defendant's failure to perform as promised, Plaintiff lost his livelihood, all to his great financial detriment.

(Pl.'s Compl. at ¶¶ 29–31). We find these allegations of fraud are insufficient to allow this Court to disregard Smith's agreement to arbitrate employment related claims. *See Seus,* 146 F.3d at 184. Therefore, we will grant Defendant's Motion to Compel Arbitration.

*II. Dismissal of Plaintiff's Claims*

This Court finds that each claim in Plaintiff's complaint arises out of the relationship created by the agreement entered into between Plaintiff and Defendant, which makes all of Plaintiff's claims subject to arbitration. Since "all of Plaintiff's claims are subject to arbitration, retaining jurisdiction would serve no purpose." *See Seus v. Nuveen & Co., Inc.,* No. CIV.A.96–5971, 1997 WL 325792, *7 (E.D.Pa. June 2, 1997), *aff'd,* 146 F.3d 175, 188. Therefore, we will dismiss Plaintiff's complaint without prejudice.

## CONCLUSION

An appropriate Order follows.

### *ORDER*

AND NOW, this 8th day of December, 1998, upon consideration of Defendant's Motion to Compel Arbitration and Stay or Dismiss the Litigation, Plaintiff's response thereto, as well as the supplemental responses of the parties, it is hereby ORDERED that, in accordance with the foregoing Memorandum, the Motion is GRANTED. It is further ORDERED that Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE.